Tionna Dolin (SBN 299010)
Email: tdolin@slpattorney.com
Ariel Harman-Holmes (SBN 315234)
Email : aharman-holmes@slpattorney.com
(emailservices@slpattorney.com)
**Strategic Legal Practices, APC**
1888 Century Park East, Floor 19
Los Angeles, CA 90067
Telephone: (310) 929-4900
Facsimile: (310) 943-3838

Attorneys for Plaintiff
CHARLES MILLER

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| CHARLES MILLER, | Case No.: |
| Plaintiff, | Assigned to: Dept. |
| vs. | |
| FCA US LLC; and DOES 1 through 10, inclusive, | **COMPLAINT FOR VIOLATION OF STATUTORY OBLIGATIONS** |
| Defendants. | JURY TRIAL DEMANDED |

Plaintiff alleges as follows:

**JURISDICTION AND VENUE**

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 because the action alleges claims pursuant to 15 U.S.C. §2310, the Magnuson-Moss Warranty Act, with a claim that exceeds the amount in controversy of $50,000, pursuant to 15 U.S.C. §2310(d)(3)(B).

2.      Furthermore, the Court has jurisdiction over this matter because there is minimal diversity as Plaintiff and Defendants are citizens of different states, with a claim that exceeds the amount in controversy of $75,000, pursuant to 28 U.S.C. § 1332.

3.      Furthermore, pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in the Central District of California because a substantial part of the events or omissions giving rise to the claim occurred within the judicial district.

4.      Assignment to the Western Division of this Court is proper because all or most of the events giving rise to Plaintiff's claims, including entering into the warranty contract for and/or repair of the Subject Vehicle giving rise to this lawsuit, occurred in Los Angeles County.

**GENERAL ALLEGATIONS**

5.      As used in this Complaint, the word "Plaintiff" shall refer to Plaintiff CHARLES MILLER.

6.      Plaintiff is a resident of Los Angeles County, California.

7.      As used in this Complaint, the word "Defendant" shall refer to all Defendants named in this Complaint.

8.      Defendant FCA US LLC ("Defendant FCA") is a corporation organized and in existence under the laws of the State of Delaware and registered with the California Department of Corporations to conduct business in California. Defendant FCA's principal place of business is in the State of Michigan. At all times relevant herein, Defendant was engaged in the business of designing,

STRATEGIC LEGAL PRACTICES, APC
1888 CENTURY PARK EAST, 19TH FLOOR, LOS ANGELES, CA 90067

STRATEGIC LEGAL PRACTICES, APC
1888 CENTURY PARK EAST, 19TH FLOOR, LOS ANGELES, CA 90067

1  manufacturing, constructing, assembling, marketing, distributing, and selling

2  automobiles and other motor vehicles and motor vehicle components in Los

3  Angeles County, California.

4       9.    Plaintiff is ignorant of the true names and capacities of the Defendants

5  sued under the fictitious names DOES 1 to 10. They are sued pursuant to Code of

6  Civil Procedure section 474.  When Plaintiff becomes aware of the true names and

7  capacities of the Defendants sued as DOES 1 to 10, Plaintiff will amend this

8  Complaint to state their true names and capacities.

9                  **FACTUAL BACKGROUND**

10      10.    On or about March 25, 2019, in California, Plaintiff entered into a

11  warranty contract with Defendant FCA regarding a 2019 Jeep Wrangler vehicle

12  identification number 1C4HJXDGXKW539144 (hereafter "Vehicle"), which was

13  manufactured and/or distributed by Defendant FCA.

14      11.    The warranty contract contained various warranties, including but not

15  limited to the bumper-bumper warranty, powertrain warranty, emission warranty,

16  etc. A true and correct copy of the warranty contract is attached hereto as **Exhibit**

17  **A**. The terms of the express warranty are described in **Exhibit A** and are

18  incorporated herein. In addition, to the these warranties, Defendant FCA also

19  provided Plaintiff with a California Emission Warranty, which Plaintiffs request

20  Defendant FCA produce as part of its discovery obligations in this case.[1]

21      12.    Pursuant to the Song-Beverly Consumer Warranty Act (the "Song-

22  Beverly Act") Civil Code sections 1790, *et seq.* the Subject Vehicle constitutes

23  "consumer goods" used primarily for family or household purposes, and Plaintiffs

24  have used the vehicle primarily for those purposes. Plaintiff is a "buyers" of

25

26        [1] Upon information and belief, Defendant FCA deliberately refuses to include the terms of the California emissions warranties in its main express warranty booklet so that California consumers are kept in the dark when Defendant FCA fails to comply with its warranty obligations under California's 7 years/70,000 miles emissions warranty, or other California emission warranties, including but not limited to, Low Emission Vehicles warranties (which have an even longer warranty term).

27

28

consumer goods under the Act. Defendant FCA is a "manufacturer" and/or "distributor" under the Song-Beverly Act.

13.     Plaintiff justifiably revokes acceptance of the Subject Vehicle under Civil Code, section 1794, *et seq.* by filing this Complaint and/or did so prior to filing the instant Complaint.

14.     These causes of action arise out of the warranty obligations of Defendant FCA in connection with a motor vehicle for which Defendant FCA issued a written warranty.

15.     Defects and nonconformities to warranty manifested themselves within the applicable express warranty period, including but not limited to, the electrical system, the engine, defects causing stalling, and the transmission, among other defects and non-conformities.

16.     Said defects/nonconformities substantially impair the use, value, or safety of the Vehicle.

17.     Plaintiff purchased the Subject Vehicle as manufactured with FCA's defective 9HP transmission and PCM.

18.     Plaintiff is informed, believes, and thereon alleges that FCA knew since prior to Plaintiff purchasing the Subject Vehicle, that the 2017 - 2020 Jeep Wrangler vehicles equipped with a 9HP transmission are defective along with the Powertrain Control Module (PCM), including Plaintiff's 2019 Jeep Wrangler, contained one or more defect(s) to the transmission and/or PCM which may result in stalling, shutting off, and/or loss of power, (the "Stalling Defect").

19.     Thus, the Stalling Defect is a safety concern because it severely affects the driver's ability to control the car's speed, acceleration, and deceleration. For example, these conditions make it difficult to safely merge into traffic or may cause a sudden loss of power while in motion. Even more troubling, the Stalling Defect can cause the vehicle to fail without warning, while the Vehicle is moving at highway speeds.

**COMPLAINT; JURY TRIAL DEMANDED**

STRATEGIC LEGAL PRACTICES, APC
1888 CENTURY PARK EAST, 19TH FLOOR, LOS ANGELES, CA 90067

20.   Plaintiff is informed, believes, and thereon alleges that prior to Plaintiff acquiring the Vehicle, FCA was well aware and knew that the PCM installed in the Vehicle was defective but failed to disclose this fact to Plaintiff at the time of sale and thereafter.

21.   Plaintiff is informed, believes, and thereon alleges that FCA acquired its knowledge of the Stalling Defect prior to Plaintiff acquiring the Vehicle, through sources not available to consumers such as Plaintiff, including but not limited to pre-production and post-production testing data; early consumer complaints about the Stalling Defect made directly to FCA and its network of dealers; aggregate warranty data compiled from FCA's network of dealers; testing conducted by FCA in response to these complaints; as well as warranty repair and part replacements data received by FCA from FCA's network of dealers, amongst other sources of internal information.

22.   Plaintiff is informed, believes, and thereon alleges that while FCA knew about the Stalling Defect, and its safety risks since prior to Plaintiff purchasing the Subject Vehicle, FCA nevertheless concealed and failed to disclose the defective nature of the Vehicle and its Stalling Defect to its sales representatives and Plaintiff at the time of sale and thereafter.  FCA omitted mention of the Stalling Defect to its consumers.

23.   Plaintiff is a reasonable consumer who interacted with sales representatives, considered FCA's advertisement, and/or other marketing materials concerning the FCA Vehicles prior to purchasing the Subject Vehicle. Had FCA revealed the Stalling Defect, Plaintiff would have been aware of it and would not have purchased the Subject Vehicle.

### FCA Had Exclusive Knowledge of the Stalling Defect

24.   FCA had superior and exclusive knowledge of the Stalling Defect and knew or should have known that the defect was not known to or reasonably discoverable by Plaintiff and before he purchased or leased the Subject Vehicle.

STRATEGIC LEGAL PRACTICES, APC
1888 CENTURY PARK EAST, 19TH FLOOR, LOS ANGELES, CA 90067

STRATEGIC LEGAL PRACTICES, APC
1888 CENTURY PARK EAST, 19TH FLOOR, LOS ANGELES, CA 90067

25.     Defendant knew or should have known, based on FCA's routine monitoring of complaints, that the 2019 Jeep Wrangler had a dangerous defect that adversely affects their drivability. Additionally, FCA knew or should have known about the Stalling Defect through sources not available to consumers, including FCA's own aggregate pre-market data and other aggregate post-market data from FCA authorized dealers.

26.     Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had Plaintiff known of the Stalling Defect, given the unsafe nature of the Stalling Defect. Furthermore, Plaintiff unknowingly exposed themselves to the risk of accident, injury, and/or liability to others as a result of the nature or the Stalling Defect which can lead to loss of power while driving at highway speeds, stalling, loss of control, and other impairments to driveability. Plaintiff is a reasonable consumer who expected the Subject Vehicle to be safe and free of defects and that FCA would not sell or lease vehicles with known safety-related defects, such as the Stalling Defect, and will disclose any such defects to its consumers when it learns of them.

27.     While it has been fully aware of the Stalling Defect, FCA actively concealed the existence and nature of the alleged defect from Plaintiff at the time of purchase, repair, and thereafter.

28.     FCA was inundated with complaints regarding the Stalling Defect but rather than repair the problem under warranty, FCA dealers either inform consumers that their vehicles are functioning properly or conduct repairs that merely mask the defect.

29.     On or about May 11, 2016, FCA issued TSB 18-057-16 to address customer concerns regarding illumination of the malfunction indicator lamp ("MIL"). The TSB calls for dealers to reprogram the PCM with the latest available software. This TSB was revised on June 17, 2016 by TSB 18-057-16 REV.A to address the same issue.

COMPLAINT; JURY TRIAL DEMANDED

30.     In or around August 2017, FCA issued Safety Recall T23 for vehicles to reprogram the PCM with new software to cure a safety-related defect with the EGR valve.

31.     The defect could cause the EGR valve to be operating with an aggressive seating velocity, which may damage the EGR valve.

32.     The Stalling Defect, which may result in vehicles shutting off, stalling without warning, loss of engine timing, loss of crankshaft position synchronization, and/or loss of power, was not cured by TSB 18-057-16 REV. A and/or Safety Recall T23.

33.     On January 11, 2018, FCA released two Safety Recalls to resolve the stalling issue experienced by customers, Safety Recall U01 / NHTSA 18V-049 and Safety Recall U02 / NHTSA 18V-048.

34.     Safety Recall U01 / NHTSA 18V-049 was issued to address customer concerns regarding an engine stall without prior warning. The Recall states that, "[i]n the majority of cases the stalling occurs at low speed, while decelerating, while at idle or while negotiating a turn. Engine stalling results in a loss of motive power, which can cause vehicle crash without prior warning." This Recall is FCA's continued attempt to address ongoing stalling issues with repackaged T23 software updates.

35.     Safety Recall U02 / NHTSA 18V-049 was issued to address customer concerns regarding an engine stall and/or a potential engine compartment fire. The Recall states that, '[e]ither of these conditions could increase the likelihood of occupant injury, and an engine stall can cause a vehicle crash without prior warning." This Recall is also another repackaged version of the existing T23 software update.

36.     Neither Recalls, nor the T23 software update, have eliminated the Stalling Defect.

STRATEGIC LEGAL PRACTICES, APC
1888 CENTURY PARK EAST, 19TH FLOOR, LOS ANGELES, CA 90067

37.    FCA admits in Safety Recall U01 that, at best, the Recall simply provides software that makes vehicles "less susceptible" to a loss of engine timing (crankshaft position synchronization).

38.    FCA has still not modified any of the defective components that cause the symptoms associated with the Stalling Defect.

39.    Under the Song-Beverly Act, Defendant FCA had an affirmative duty to promptly offer to repurchase or replace the Subject Vehicle at the time if failed to conform the Subject Vehicle to the terms of the express warranty after a reasonable number of repair attempts.[2]

40.    Defendant FCA US LLC has failed to either promptly replace the Subject Vehicle or to promptly make restitution in accordance with the Song-Beverly Act.

41.    Under the Act, Plaintiff is entitled to reimbursement of the price paid for the vehicle less that amount directly attributable to use by the Plaintiff prior to the first presentation to an authorized repair facility for a nonconformity.

42.    Plaintiff is entitled to replacement or reimbursement pursuant to Civil Code, section 1794, et seq. Plaintiff is entitled to rescission of the contract pursuant to Civil Code, section 1794, et seq. and Commercial Code, section 2711.

---

[2] "A manufacturer's duty to repurchase a vehicle does not depend on a consumer's request, but instead arises as soon as the manufacturer fails to comply with the warranty within a reasonable time. (*Krotin v. Porsche Cars North America, Inc.* (1995) 38 Cal.App.4th 294, 301-302, 45 Cal.Rptr.2d 10.) Chrysler performed the bridge operation on Santana's vehicle in August 2014 with 30,262 miles on the odometer—within the three-year, 36,000 mile warranty. The internal e-mails demonstrating Chrysler's awareness of the safety risks inherent in the bridge operation were sent in September 2013, and thus Chrysler was well aware of the problem when it performed the bridge operation on Santana's vehicle. Thus, Chrysler's duty to repurchase or provide restitution arose prior to the expiration of the three-year, 36,000 mile warranty. Moreover, although we do not have the actual five-year, 100,000 mile power train warranty in our record, Santana's expert testified that the no-start/stalling issues Santana experienced were within the scope of the power train warranty, which was still active when Santana requested repurchase in approximately January 2016, at 44,467 miles. Thus the premise of Chrysler's argument—that Santana's request for repurchase was outside the relevant warranty—is not only irrelevant, but wrong." *Santana v. FCA US, LLC,* 56 Cal. App. 5th 334*, 270 Cal. Rptr. 3d 335 (2020).*

COMPLAINT; JURY TRIAL DEMANDED

43.     Plaintiff is entitled to recover any "cover" damages under Commercial Code, sections 2711, 2712, and Civil Code, section 1794, et seq.

44.     Plaintiff is entitled to recover all incidental and consequential damages pursuant to 1794 et seq. and Commercial Code, sections 2711, 2712, and 2713 et seq.

45.     Plaintiff suffered damages in a sum to be proven at trial in an amount that is not less than $25,001.00.

46.     Plaintiff is entitled to all incidental, consequential, and general damages resulting from Defendants' failure to comply with its obligations under the Song-Beverly Act.

47.     Plaintiff discovered Defendants' wrongful conduct alleged herein shortly before the filing of the complaint, when Plaintiff requested a buyback and/or restitution of the Subject Vehicle from Defendant FCA as the Vehicle continued to exhibit symptoms of defects following Defendant FCA's unsuccessful attempts to repair them. However, Defendant FCA failed to provide restitution pursuant to the Song-Beverly Consumer Warranty Act and/or Magnuson-Moss Warranty Act.

48.     Under the Song-Beverly Act, Defendant FCA had an affirmative duty to promptly offer to repurchase or replace the Subject Vehicle at the time if failed to conform the Subject Vehicle to the terms of the express warranty after a reasonable number of repair attempts.[3]

---

[3] "A manufacturer's duty to repurchase a vehicle does not depend on a consumer's request, but instead arises as soon as the manufacturer fails to comply with the warranty within a reasonable time. (*Krotin v. Porsche Cars North America, Inc.* (1995) 38 Cal.App.4th 294, 301-302, 45 Cal.Rptr.2d 10.) Chrysler performed the bridge operation on Santana's vehicle in August 2014 with 30,262 miles on the odometer—within the three-year, 36,000 mile warranty. The internal e-mails demonstrating Chrysler's awareness of the safety risks inherent in the bridge operation were sent in September 2013, and thus Chrysler was well aware of the problem when it performed the bridge operation on Santana's vehicle. Thus, Chrysler's duty to repurchase or provide restitution arose prior to the expiration of the three-year, 36,000 mile warranty. Moreover, although we do not have the actual five-year, 100,000 mile power train warranty in our record, Santana's expert testified that the no-start/stalling issues Santana experienced were within the scope of the power train warranty, which was still active when Santana requested

STRATEGIC LEGAL PRACTICES, APC
1888 CENTURY PARK EAST, 19TH FLOOR, LOS ANGELES, CA 90067

49.   Defendant FCA has failed to either promptly replace the Subject Vehicle or to promptly make restitution in accordance with the Song-Beverly Act.

50.   Under the Song-Beverly Act, Plaintiff is entitled to reimbursement of the price paid for the vehicle less that amount directly attributable to use by the Plaintiff prior to the first presentation to an authorized repair facility for a nonconformity.

51.   Plaintiff is entitled to replacement or reimbursement pursuant to Civil Code, section 1794, et seq. Plaintiff is entitled to rescission of the contract pursuant to Civil Code, section 1794, et seq. and Commercial Code, section 2711.

52.   Plaintiff is entitled to recover any "cover" damages under Commercial Code, sections 2711, 2712, and Civil Code, section 1794, et seq.

53.   Plaintiff is entitled to recover all incidental and consequential damages pursuant to 1794 et seq. and Commercial Code, sections 2711, 2712, and 2713 et seq.

54.   Plaintiff suffered damages in a sum to be proven at trial in an amount that exceeds $75,000.00.

55.   Plaintiff is entitled to all incidental, consequential, and general damages resulting from Defendants' failure to comply with its obligations under the Song-Beverly Act and/or Magnuson-Moss Warranty Act.

## TOLLING OF THE STATUTES OF LIMITATION

### A.   Class Action Tolling

56.   Under the tolling rule articulated in *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 94 S. Ct. 756, 38 L. Ed. 2d 713 (1974) ("*American Pipe*"), the filing of a class action lawsuit in federal court tolls the statute of limitations for the claims of unnamed class members until the class certification issue is resolved.  In

repurchase in approximately January 2016, at 44,467 miles. Thus the premise of Chrysler's argument—that Santana's request for repurchase was outside the relevant warranty—is not only irrelevant, but wrong." *Santana v. FCA US, LLC,* 56 Cal. App. 5th 334*, 270 Cal. Rptr. 3d 335 (2020).

STRATEGIC LEGAL PRACTICES, APC
1888 CENTURY PARK EAST, 19TH FLOOR, LOS ANGELES, CA 90067

applying *American Pipe* tolling to California cases, the California Supreme Court summarized the tolling rule derived from *American Pipe* and stated that the statute of limitations is tolled from the time of commencement of the suit to the time of denial of certification for all purported members of the class. *Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103, 1119 (1988). Tolling lasts from the day a class claim is asserted until the day the suit is conclusively not a class action. *Falk v. Children's Hosp. Los Angeles*, 237 Cal. App. 4th 1454, 1464 (2015).

57.     The tolling of Plaintiff's individual statute of limitations encourages the protection of efficiency and economy in litigation as promoted by the class action devise, so that putative class members would not find it necessary to seek to intervene or to join individually because of fear the class might never be certified or putative class members may subsequently seek to request exclusion.

**B.     Discovery Rule Tolling**

58.     Making it even more difficult to discover that the Subject Vehicle's engine suffered from a safety defect was Defendants' issuance of various TSBs and Recalls purporting to be able to fix various symptoms of the defects.

59.     As a result of the foregoing, Plaintiff did not become suspicious of Defendant's concealment of the latent defects and its inability to repair it until shortly before the filing of the complaint, when the issue persisted following Defendant's representations that the Vehicle was repaired, and thus contacted Defendant directly.

60.     Plaintiff always acted diligently in presenting the Subject Vehicle for repairs and following the directives of Defendant's authorized repair personnel.

61.     Defendants were under a continuous duty to disclose to Plaintiff the true character, quality, and nature of the Defendant Vehicles' suffering from the Defects, and the inevitable repairs, costs, time, and monetary damage resulting from the Defects. Due in part to Defendant's failure to do so, Plaintiff was unable to discover Defendant's wrongful conduct alleged herein until the issues persisted

STRATEGIC LEGAL PRACTICES, APC
1888 CENTURY PARK EAST, 19TH FLOOR, LOS ANGELES, CA 90067

STRATEGIC LEGAL PRACTICES, APC
1888 CENTURY PARK EAST, 19TH FLOOR, LOS ANGELES, CA 90067

1  following Defendants attempts to conform the Vehicle to its warranties.

2       62.    Plaintiff discovered Defendants' wrongful conduct alleged herein

3  shortly before the filing of the complaint, when Plaintiff requested a buyback

4  and/or restitution of the Subject Vehicle from Defendant FCA as the Vehicle

5  continued to exhibit symptoms of defects following Defendant FCA's unsuccessful

6  attempts to repair them. However, Defendant FCA failed to provide restitution

7  pursuant to the Song-Beverly Consumer Warranty Act and/or Magnuson-Moss

8  Warranty Act.

9       63.    Plaintiff incorporates herein the portions of Plaintiff's repair history

10  set forth above, by reference.

11      **C.**    **The Repair Doctrine**

12       64.    The statute of limitations is tolled by various unsuccessful attempts

13  to repair the vehicle.[4]

14       65.    Additionally, the limitations period for warranty claims is tolled

15  against a defendant whenever that Defendant claims that the defect is susceptible

16  to repair and attempts to repair the defect.[5]

17       66.    Here, Defendant undertook to perform various defects repair

18  measures in the form of TSBs and recalls. During the time in which Defendant

19  represented to Plaintiff that the Vehicle was fixable and attempted to fix it, the

20  warranty period may thus have been tolled.

21       67.    Plaintiff discovered Defendants' wrongful conduct alleged herein

22

---

23     [4] See *Aced v. Hobbs–Sesack Plumbing Co*., 55 Cal.2d 573, 585 (1961) ("The
statute of limitations is tolled where one who has breached a warranty claims that
24  the defect can be repaired and attempts to make repairs.") and *A&B Painting &
Drywall, Inc. v. Sup. Ct*., 25 Cal.App.4th 349, 355 (2002) ("Tolling during a period
25  of repairs rests upon the same basis as does an estoppel to assert the statute of
limitations, i.e., reliance by the plaintiff upon the words or actions of the defendant
26  that repairs will be made.").

27     [5] "Tolling during a period of repairs generally rests upon the same legal
basis as does an estoppel to assert the statute of limitations, i.e., reliance by the
28  plaintiff on the words or actions of the defendant that repairs will be made."
*Cardinal Health 301, Inc*., *supra,* 169 Cal.App.4th at pp. 133–34.

shortly before the filing of the complaint, when Plaintiff requested a buyback and/or restitution of the Subject Vehicle from Defendant FCA as the Vehicle continued to exhibit symptoms of defects following Defendant FCA's unsuccessful attempts to repair them. However, Defendant FCA failed to provide restitution pursuant to the Song-Beverly Consumer Warranty Act and/or Magnuson-Moss Warranty Act.

**FIRST CAUSE OF ACTION**

**BY PLAINTIFF AGAINST DEFENDANT FCA**

**VIOLATION OF SUBDIVISION (D) OF CIVIL CODE § 1793.2**

68.    Plaintiff incorporates by reference the allegations contained in the paragraphs set forth above.

69.    Defendant FCA and its representatives in this state have been unable to service or repair the Vehicle to conform to the applicable express warranties after a reasonable number of opportunities.  Despite this fact, Defendant failed to promptly replace the Vehicle or make restitution to Plaintiff as required by Civil Code section 1793.2, subdivision (d) and Civil Code section 1793.1, subdivision (a)(2).

70.    Plaintiff has been damaged by Defendant's failure to comply with its obligations pursuant to Civil Code section 1793.2, subdivision (d) and Civil Code section 1793.1, subdivision (a)(2), and therefore brings this cause of action pursuant to Civil Code section 1794.

71.    Defendant's failure to comply with its obligations under Civil Code section 1793.2, subdivision (d) was willful, in that Defendant and its representative were aware that they were unable to service or repair the Vehicle to conform to the applicable express warranties after a reasonable number of repair attempts, yet Defendant failed and refused to promptly replace the Vehicle or make restitution. Accordingly, Plaintiff is entitled to a civil penalty of two times Plaintiff's actual damages pursuant to Civil Code section 1794, subdivision (c).

STRATEGIC LEGAL PRACTICES, APC
1888 CENTURY PARK EAST, 19TH FLOOR, LOS ANGELES, CA 90067

72.    Defendant does not maintain a qualified third-party dispute resolution process which substantially complies with Civil Code section 1793.22. Accordingly, Plaintiffs are entitled to a civil penalty of two times Plaintiff's actual damages pursuant to Civil Code section 1794, subdivision (e).

73.    Plaintiff seeks civil penalties pursuant to section 1794, subdivisions (c), and (e) in the alternative and does not seek to cumulate civil penalties, as provided in Civil Code section 1794, subdivision (f).

### SECOND CAUSE OF ACTION
### BY PLAINTIFF AGAINST DEFENDANT FCA
### VIOLATION OF SUBDIVISION (B) OF CIVIL CODE § 1793.2

74.    Plaintiff incorporates by reference the allegations contained in the paragraphs set forth above.

75.    Although Plaintiff presented the Vehicle to Defendant's representative in this state, Defendant and its representative failed to commence the service or repairs within a reasonable time and failed to service or repair the Vehicle so as to conform to the applicable warranties within 30 days, in violation of Civil Code section 1793.2, subdivision (b).  Plaintiff did not extend the time for completion of repairs beyond the 30-day requirement.

76.    Plaintiff has been damaged by Defendant's failure to comply with its obligations pursuant to Civil Code section 1793.2(b), and therefore brings this Cause of Action pursuant to Civil Code section 1794.

77.    Plaintiff has rightfully rejected and/or justifiably revoked acceptance of the Vehicle, and has exercised a right to request a buyback.  By serving this Complaint, Plaintiff does so again.  Accordingly, Plaintiff seeks the remedies provided in California Civil Code section 1794(b)(1), including the entire value of the Vehicle.  In the alternative, Plaintiff seeks the remedies set forth in California Civil Code section 1794(b)(2), including the diminution in value of the Vehicle resulting from its defects.  Plaintiff believes that, at the present time, the Vehicle's

value is *de minimis.*

78.    Defendant FCA'S failure to comply with its obligations under Civil Code section 1793.2(b) was willful, in that Defendant FCA and its representative were aware that they were obligated to service or repair the Vehicle to conform to the applicable express warranties within 30 days, yet they failed to do so. Accordingly, Plaintiff is entitled to a civil penalty of two times Plaintiff's actual damages pursuant to Civil Code section 1794(c).

**THIRD CAUSE OF ACTION**

**BY PLAINTIFF AGAINST DEFENDANT FCA**

**VIOLATION OF SUBDIVISION (A)(3) OF CIVIL CODE § 1793.2**

79.    Plaintiff incorporates by reference the allegations contained in paragraphs set forth above.

80.    In violation of Civil Code section 1793.2, subdivision (a)(3), Defendant failed to make available to its authorized service and repair facilities sufficient service literature and replacement parts to effect repairs during the express warranty period.  Plaintiff has been damaged by Defendant's failure to comply with its obligations pursuant to Civil Code section 1793.2(a)(3), and therefore brings this Cause of Action pursuant to Civil Code section 1794.

81.    Defendant's failure to comply with its obligations under Civil Code section 1793.2, subdivision (a)(3) was wilful, in that Defendant knew of its obligation to provide literature and replacement parts sufficient to allow its repair facilities to effect repairs during the warranty period, yet Defendant failed to take any action to correct its failure to comply with the law. Accordingly, Plaintiff is entitled to a civil penalty of two times Plaintiff's actual damages; pursuant to Civil Code section 1794(c).

///

///

///

STRATEGIC LEGAL PRACTICES, APC
1888 CENTURY PARK EAST, 19TH FLOOR, LOS ANGELES, CA 90067

**FOURTH CAUSE OF ACTION**

**BY PLAINTIFF AGAINST DEFENDANT FCA**

**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**

**(CIVIL CODE, § 1791.1; § 1794; § 1795.5)**

82.   Plaintiff incorporates by reference the allegations contained in the paragraphs set forth above.

83.   Pursuant to Civil Code section 1792, the sale of the Vehicle was accompanied by Defendant's implied warranty of merchantability.  Pursuant to Civil Code section 1791.1, the duration of the implied warranty is coextensive in duration with the duration of the express written warranty provided by Defendant, except that the duration is not to exceed one-year.

84.   Pursuant to Civil Code section 1791.1 (a), the implied warranty of merchantability means and includes that the Vehicle will comply with each of the following requirements:  (1) The Vehicle will pass without objection in the trade under the warranty contract description; (2) The Vehicle is fit for the ordinary purposes for which such goods are used; (3) The Vehicle is adequately contained, packaged, and labelled; (4) The Vehicle will conform to the promises or affirmations of fact made on the container or label.

85.   At the time of entering into the warranty contract, or within one-year thereafter, the Vehicle contained or developed the defects set forth above. The existence of each of these defects constitutes a breach of the implied warranty because the Vehicle (1) does not pass without objection in the trade under the warranty contract description, (2) is not fit for the ordinary purposes for which such goods are used, (3) is not adequately contained, packaged, and labelled, and (4) does not conform to the promises or affirmations of fact made on the container or label.

86.   Plaintiff has been damaged by Defendant's failure to comply with its obligations under the implied warranty, and therefore brings this Cause of Action

STRATEGIC LEGAL PRACTICES, APC
1888 CENTURY PARK EAST, 19TH FLOOR, LOS ANGELES, CA 90067

pursuant to Civil Code section 1794.

## FIFTH CAUSE OF ACTION
## BY PLAINTIFF AGAINST DEFENDANT FCA
## VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT

87.    Plaintiff incorporates by reference the allegations contained in the paragraphs set forth above.

88.    Plaintiff is "consumer[s]" as defined in the Magnuson-Moss Warranty Act (referred to as "Mag-Moss"), 15 U.S.C. § 2301(3).

89.    Defendant is a "supplier" and "warrantor" as defined in the Mag-Moss Act, 15 U.S.C. § 2301(4), 15 U.S.C. § 2301(5).

90.    The Subject Vehicle is a "consumer product" as defined in the Mag-Moss Act, 15 U.S.C. § 2301(1).

91.    In addition to the express warranty, in connection with the sale of the Vehicle to Plaintiff, an implied warranty of merchantability was created under California law. The Subject Vehicle's implied warranties were not disclaimed using a Buyer's Guide displayed on the Vehicle; thus any purported disclaimers were ineffective pursuant to 15 U.S.C. § 2308(c).

92.    In accordance with Defendant's warranty, Plaintiff delivered the Vehicle to Defendant's representatives, including its representatives in this state to perform warranty repairs. Plaintiff did so within a reasonable time. Each time Plaintiff delivered the Vehicle, Plaintiff notified Defendant and its representative of the characteristics of the defects. However, the representative failed to repair the Vehicle, breaching the terms of the written warranty on each occasion

93.    Defendant violated the Mag-Moss Act when it breached the express warranty and implied warranties by failing to repair the defects and nonconformities, or to repurchase and/or replace the Subject Vehicle.

94.    Plaintiff performed all terms, conditions, covenants, promises and obligations required to be performed on Plaintiff's part under the terms of the

STRATEGIC LEGAL PRACTICES, APC
1888 CENTURY PARK EAST, 19TH FLOOR, LOS ANGELES, CA 90067

agreement, express warranty and implied warranty except for those terms and conditions, covenants, promises and obligations or payments for which performance and/or compliance has been excused by the acts and/or conduct of Defendant and/or by operation of law

95.   Plaintiff has also met all of Plaintiff's obligations and preconditions to bring this claim, or alternatively it would have been futile for Plaintiff to do so.

96.   In addition, Plaintiff has met all of Plaintiff's obligations for bringing this claim as provided in the written warranties, or alternatively, Defendant does not maintain an informal dispute resolution process for the purpose of resolving claims for breach of the implied warranty of merchantability, and does not maintain an informal dispute resolution process for resolving express warranty claims that complies with the requirements of 15 U.S.C. § 2310(a) and the rules and regulations adopted pursuant thereto by the Federal Trade Commission.

97.   As a direct and proximate result of the acts and omissions of the Defendant, Plaintiff has been damaged in the form of general, special and actual damages in an amount within the jurisdiction of this Court, according to proof at trial.

98.   Under the Act, Plaintiff is entitled to reimbursement of the entire amount paid or payable.

99.   Plaintiff is entitled to all incidental, consequential, penalties, and general damages resulting from Defendant's failure to comply with their obligations under the Mag-Moss Act.

100.   Plaintiff has been damaged by Defendant's failure to comply with its obligations under the express warranty, implied warranty, as well as any other violations alleged here, and therefore bring this claim pursuant to 15 U.S.C. §2310(d) and seek remedies available pursuant to Magnuson-Moss Act under California law, including California Civil Code Section 1794 and/or California Commercial Code Sections 2711-2715, and/or other remedies that the Court may

17

1   deem proper.

2   101.   Plaintiff is entitled under the Mag-Moss Act to recover as part of the

3   judgment a sum equal to the aggregate amount of costs and expenses, including

4   attorney's fees, reasonably incurred in connection with the commencement and

5   prosecution of this action pursuant to 15 U.S.C. § 2310(d)(2).

6   ///

7   **SIXTH CAUSE OF ACTION**

8   **BY PLAINTIFF AGAINST DEFENDANT FCA**

9   **(Fraudulent Inducement - Concealment)**

10   102.   Plaintiff incorporates by reference the allegations contained in the

11   paragraphs set forth above.

12   103.   FCA committed fraud by allowing the Subject Vehicle to be sold to

13   Plaintiff without disclosing that the Subject Vehicle and its transmission and PCM

14   was defective which can cause loss of engine timing and result in shutting off or

15   stalling without warning. It can also result in a total loss of power, including

16   power steering, which can prevent acceleration, deceleration, and steering and

17   significantly impair driver control. Faults from the 9HP transmission, which

18   communicates with the PCM, can also cause the Subject Vehicle to lose power.

19   104.   Indeed, Plaintiff alleges that prior to the sale of the Subject Vehicle to

20   Plaintiff, FCA knew that the Vehicle and its transmission suffered from an

21   inherent defect, was defective, would fail prematurely, and was not suitable for its

22   intended use.

23   105.   FCA was under a duty to Plaintiff to disclose the defective nature of

24   the Vehicle and its transmission, its safety consequences and/or the associated

25   repair costs because:

26   a.   Plaintiff is informed, believes, and thereon alleges that FCA

27   acquired its knowledge of the Stalling Defect and its potential

28   consequences prior to Plaintiff acquiring the Vehicle, through sources

STRATEGIC LEGAL PRACTICES, APC
1888 CENTURY PARK EAST, 19TH FLOOR, LOS ANGELES, CA 90067

STRATEGIC LEGAL PRACTICES, APC
1888 CENTURY PARK EAST, 19TH FLOOR, LOS ANGELES, CA 90067

not available to consumers such as Plaintiff, including but not limited to pre-production testing data, early consumer complaints about the Stalling Defect made directly to FCA and its network of dealers, aggregate warranty data compiled from FCA's network of dealers, testing conducted by FCA in response to these complaints, as well as warranty repair and part replacements data received by FCA from FCA's network of dealers, amongst other sources of internal information;

      b.     FCA was in a superior position from various internal sources to know (or should have known) the true state of facts about the material defects contained in vehicles equipped with 9HP transmission; and

      c.     Plaintiff could not reasonably have been expected to learn or discover of the Vehicle's Stalling Defect and its potential consequences until well after Plaintiff purchased the Vehicle.

106.   In failing to disclose the defects in the Vehicle's transmission (and PCM), FCA has knowingly and intentionally concealed material facts and breached its duty not to do so.

107.   The facts concealed or not disclosed by FCA to Plaintiff is material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Vehicle. Had Plaintiff known that the Vehicle and its transmission and PCM were defective at the time of sale, they would not have purchased the Vehicle.

108.   Plaintiff is a reasonable consumer who interacted with FCA's sales representatives and reviewed materials disseminated by FCA concerning FCA Vehicles prior to purchasing the Subject Vehicle. Had Defendant disclosed the Stalling Defect, a safety hazard, to its sales representatives and/or the consumer public, Plaintiff would have been aware of it and would not have purchased the Subject Vehicle.

109.   Plaintiff was harmed by purchasing a vehicle that Plaintiff would not have leased and/or purchased had Plaintiff known the true facts about the Stalling Defect.

110.   Furthermore, Plaintiff unknowingly exposed himself to the risk of liability, accident and injury as a result of Defendant's fraudulent concealment of the Stalling Defect.

**PRAYER**

PLAINTIFF PRAYS for judgment against Defendant as follows:

a.   For general, special and actual damages according to proof;

b.   For restitution;

c.   For any consequential and incidental damages;

d.   For revocation of acceptance of the Subject Vehicle, rescission, reimbursement and/or restitution of all monies expended;

e.   For diminution in value;

f.   For a civil penalty in the amount of two times Plaintiffs' actual damages pursuant to Civil Code section 1794, subdivision (c) or (e);

g.   For prejudgment interest at the legal rate;

h.   For punitive damages;

i.   For costs of the suit and Plaintiffs' reasonable attorneys' fees pursuant to Civil Code section 1794, subdivision (d);

j.   For costs, expenses and attorney's fees reasonably incurred in connection with the commencement and prosecution of this action pursuant to 15 U.S.C. § 2310(d)(2); and

k.   For such other relief as the Court may deem proper.

///

STRATEGIC LEGAL PRACTICES, APC
1888 CENTURY PARK EAST, 19TH FLOOR, LOS ANGELES, CA 90067

Dated: May 05, 2022                STRATEGIC LEGAL PRACTICES, APC

                                   BY:          /s/ Tionna Dolin
                                         TIONNA DOLIN
                                         Attorneys for Plaintiff,
                                         CHARLES MILLER

**COMPLAINT; JURY TRIAL DEMANDED**

1

## <u>**DEMAND FOR JURY TRIAL**</u>

2

Plaintiff hereby demands a jury trial on all causes of action asserted herein.

3

4

5

Dated: May 05, 2022                    STRATEGIC LEGAL PRACTICES, APC

6

7

BY:        /s/ Tionna Dolin
                 TIONNA DOLIN

8

                 Attorneys for Plaintiff,
                 ROBERT A. DRIZ

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT; JURY TRIAL DEMANDED**

STRATEGIC LEGAL PRACTICES, APC
1888 CENTURY PARK EAST, 19TH FLOOR, LOS ANGELES, CA 90067